HMG.3.12.25
2023R00026

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **Criminal Number:** TDC 25cr73 |
| ) | |
| **v.** ) | **Bank Fraud, 18 U.S.C. § 1344,** |
| ) | **Aggravated Identity Theft, 18 U.S.C.** |
| **MOUNTEE BROWN** ) | **§ 1028A** |
| ) | |

USDC- BALTIMORE
'25 MAR 21 PM3:02

### INFORMATION

### COUNT ONE
#### (Bank Fraud)

The United States Attorney for the District of Maryland charges that:

### INTRODUCTION

At all times relevant to this Information:

1.      Defendant **MOUNTEE BROWN ("BROWN")** was a resident of Clinton, Maryland.

2.      Bank A was a financial institution within the meaning of Title 18, United States Code, Section 20, as its deposits were insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank A was headquartered in Charlotte, North Carolina.

3.      **BROWN** was a bank teller at Bank A in Upper Marlboro, Maryland. **BROWN's** responsibilities included accepting deposits and conducting withdrawals at the behest of Bank A's customers.

4.      At all times relevant, **BROWN**, in his role as a bank teller with Bank A, had access to Bank A accounts of Victim #1, Victim #2, Victim #3, Victim #4, and Victim #5.

## THE SCHEME TO DEFRAUD

5.      Beginning in or about October 2022 and continuing to in or about November 2022, in the District of Maryland and elsewhere, the defendant,

### MOUNTEE BROWN,

did knowingly and willfully and intend to devise a scheme and artifice to defraud and to obtain money from Bank A, which was insured by the Federal Deposit Insurance Corporation, and Victims #1 through 5, by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

6.      It was part of the scheme to defraud that **BROWN** used his position as a bank teller of Bank A to cause at least 26 unauthorized cash withdrawals involving the accounts of Victims #1 through #5.

7.      It was further part of the scheme to defraud that **BROWN** worked in concert with Co-conspirator #1, Co-conspirator #2, and Co-conspirator #3 to conduct the unauthorized cash withdrawals, and for his participation, **BROWN** received a percentage of the fraudulent proceeds.

8.      It was further part of the scheme to defraud that, on various occasions, Co-conspirators #1 through #3 entered Bank A and approached **BROWN** at his designated teller station pretending to be a customer of Bank A. **BROWN** conducted withdrawal transactions from victim accounts, usually at a value of $10,000 per transaction.

9.      It was further part of the scheme to defraud that, despite knowing Co-conspirators #1 through #3 were not the individuals whose names were on the accounts, **BROWN** falsely wrote on the withdrawal tickets that he verified the customer conducting the transaction. **BROWN** bypassed Bank A internal controls by stating that the Co-conspirators were "Known Clients." In

doing so, **BROWN** avoided obtaining required identification information such as a driver's license number or passport number to verify the customer.

10.    It was further part of the scheme to defraud that, on at least 25 transactions, **BROWN** entered his supervisor's initials as the Bank A employee who purportedly knew the clients conducting the transactions. **BROWN** entered his supervisor's initials without his supervisor's knowledge or consent.

11.    It was further part of the scheme to defraud that, on October 21, 2022, Co-conspirator #1 entered Bank A and approached **BROWN** at his designated teller station. **BROWN** knew that Co-conspirator #1 was not Victim #1. Nonetheless, **BROWN** and Co-conspirator #1 conducted a $10,000 cash withdrawal from Victim #1's account without Victim #1's knowledge or consent. **BROWN** conducted the cash withdrawal by falsely documenting that he had verified the customer, the customer was a "Known Client," and the customer was known by **BROWN's** supervisor. Co-conspirator #1 falsely signed the withdrawal ticket as Victim #1.

12.    It was further part of the scheme to defraud that, on October 22, 2022, **BROWN** and Co-conspirator #1 conducted two additional unauthorized withdrawal transactions on the account of Victim #1 totaling $20,000. The same day, **BROWN** made a cash deposit of approximately $4,300 at another financial institution.

13.    It was further part of the scheme to defraud that, on October 25, 2022, Co-conspirator #2 entered Bank A and approached **BROWN** at his designated teller station. **BROWN** knew that Co-conspirator #2 was not Victim #2. Nonetheless, **BROWN** and Co-conspirator #2 conducted a $10,000 cash withdrawal from Victim #2's account without Victim #2's knowledge or consent. **BROWN** conducted the cash withdrawal by falsely documenting that he had verified

the customer, the customer was a "Known Client," and the customer was known by **BROWN's** supervisor. Co-conspirator #2 falsely signed the withdrawal ticket as Victim #2.

14.    It was further part of the scheme to defraud that, also on October 25, 2022, Co-conspirator #2 re-entered Bank A and approached **BROWN** at his designated teller station. **BROWN** and Co-conspirator #2 conducted a $10,000 cash withdrawal from Victim #3's account, without Victim #3's knowledge or consent. **BROWN** conducted the cash withdrawal by falsely stating he verified the customer, the customer was a "Known Client," and the customer was known by **BROWN's** supervisor. Co-conspirator #2 falsely signed the withdrawal ticket as Victim #3.

15.    It was further part of the scheme to defraud that, on November 4, 2022, Co-conspirator #3 entered Bank A and approached **BROWN** at his designated teller station. **BROWN** knew that Co-conspirator #3 was not Victim #4 or Victim #5. **BROWN** and Co-conspirator #3 conducted a $10,000 cash withdrawal from the account of Victim #4 and a $10,000 cash withdrawal from the account of Victim #5. The withdrawal transactions were conducted without the knowledge or consent of Victim #4 or Victim #5. **BROWN** conducted the simultaneous cash withdrawal by falsely stating he verified the customer, the customer was a "Known Client," and the customer was known by **BROWN's** supervisor. Co-conspirator #3 falsely signed the withdrawal tickets as Victim #4 and Victim #5, respectively.

16.    It was further part of the scheme to defraud that, between October 22, 2022 and December 6, 2022, **BROWN** made cash deposits of approximately $30,200 into his personal account held at another financial institution. As a result of his participation in the below described fraud, **BROWN** and other co-conspirators obtained, directly or indirectly, an amount up to approximately $255,000 and Bank A has sustained a loss of $255,000.

18 U.S.C. § 1344.

## COUNT TWO
### (Aggravated Identity Theft)

The United States Attorney for the District of Maryland further charges that:

1.     The allegations set forth in Paragraphs 1 through 4 and 6 through 16 of Count One of this Information are incorporated here.

2.     On or about October 21, 2022, in the District of Maryland, the defendant,

### MOUNTEE BROWN,

did, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), knowingly possess and use, without lawful authority, a means of identification of another person, to wit, Victim #1's name, signature, and bank account information during and in relation to Bank Fraud, in violation of 18 U.S.C. § 1344, as charged in Count One of this Information.

18 U.S.C. § 1028A(a)(1), (c)(4), (c)(5).

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1.      Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction of the offense charged in Count One of the Information.

### **Bank Fraud Forfeiture**

2.      Upon conviction of the offense set forth in Count One, the defendant,

### **MOUNTEE BROWN,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud, including, but not limited to, a money judgment representing the proceeds he obtained from his participation in the scheme to defraud.

### **Substitute Assets**

3.      If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

      a.  cannot be located upon the exercise of due diligence

      b.  has been transferred, sold to, or deposited, with a third party

      c.  has been placed beyond the jurisdiction of the court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property that cannot be divided without

         difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the

forfeitable property described above, pursuant to 21 U.S.C. § 853(p), as incorporated by 28

U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C).
21 U.S.C. § 853(p).
28 U.S.C. § 2461(c).

KOH/

Digitally signed by
SEAN DELANEY
Date: 2025.03.14
14:22:23 -04'00'

Kelly O. Hayes
United States Attorney